IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **EXODUS VISION, LLC,** | |
| **Plaintiff,** | |
| v. | 1:16-cv-01795-WSD |
| **TOUCHMARK NATIONAL BANK, and QUALITY MED, INC.,** | |
| **Defendants.** | |

## OPINION AND ORDER

This matter is before the Court on Defendant Quality Med, Inc.'s ("Quality Med") Motion to Dismiss Plaintiff's Third Amended Complaint [40].

### I.   BACKGROUND

A.   Facts

Plaintiff Exodus Vision, LLC (Plaintiff or "Exodus Vision") is a single-member limited liability company formed under the laws of the State of Nevada.  (Third Am. Compl. ("Complaint") [34] ¶ 1).  Its sole member is a citizen of New York.  (Id.).  Defendant Touchmark National Bank ("Touchmark") is a national bank with its main office located at Alpharetta, Georgia.  (Id. ¶ 2). Quality Med is a Georgia corporation with its principal office at Tucker, Georgia. (Id. ¶ 3).

In January 2011, Exodus Vision purchased multiple "Vision Center at Meijer" stores, and as part of this purchase, Exodus Vision also acquired ophthalmic equipment worth about $181,790.  (Id. ¶ 7).  From 2011 to 2015, Exodus Vision purchased additional ophthalmic equipment for use at eye care centers.  (Id. ¶ 8).  In early 2015, Exodus Vision closed all the eye care centers and shipped the ophthalmic equipment to various storage facilities for temporary storage.  (Id. ¶ 9).

One of the shipments was delivered to Dwain Curtis ("Curtis") of Ophthalmic Equipment Resource, LLC ("OER").  (Id. ¶ 10).  OER and Exodus Vision had done business in the past, so Curtis agreed to store Plaintiff's ophthalmic equipment free of charge at OER's unused warehouse space located at Lawrenceville, Georgia.  (Id. ¶¶ 11, 12).  Plaintiff's ophthalmic equipment was stored in a segregated area of OER's warehouse, and Curtis inventoried and placed yellow tags on Plaintiff's equipment to distinguish it from OER's own inventory.  (Id. ¶¶ 14, 18).  Plaintiff's ophthalmic equipment stored at OER had an appraised resale value of at least $126,041.25.[1]  (Id. ¶ 19).

---

[1]   Plaintiff submitted a price evaluation from Walman Instruments, which estimated the current market value of the equipment as of January 2016.  ([1.3]).

2

On August 14, 2014, Touchmark made a loan to OER secured by OER's existing and after-acquired inventory. (Id. ¶ 20). In November 2015, OER defaulted on the loan, and Touchmark advised OER and Curtis that it intended to conduct a sale of the collateral located in OER's warehouse. (Id. ¶ 22). Later that month, Curtis filed Chapter 7 bankruptcy. (Id. ¶ 23).

Beginning in November 2015, counsel for Curtis and OER and counsel for Touchmark communicated regularly regarding the sale of the collateral. (Id. ¶ 24). On November 16, 2015, Touchmark sought a valuation of its collateral, and OER provided notice of Plaintiff's interest in the ophthalmic equipment stored at the warehouse. (Id. ¶ 25). On November 18, 2015, Touchmark inspected the warehouse as well as Plaintiff's ophthalmic equipment, which was tagged to differentiate it from OER's assets. On November 19, 2015, OER provided Touchmark with an itemized list of Plaintiff's ophthalmic equipment, including each item's brand, model, and serial number. (Id. ¶ 28). On November 25, 2015, OER provided Touchmark with another copy of the itemized list of Plaintiff's ophthalmic equipment as well as Curtis's inventory of the equipment. (Id. ¶ 32).

On December 2, 2015, Exodus Vision, after learning of Curtis's bankruptcy filing, contacted Touchmark to ask about the "course of action need[ed] to be taken for [Plaintiff] to be able to obtain possession of" Plaintiff's ophthalmic equipment.

(Id. ¶ 38). From December 2, 2015, to December 16, 2015, Plaintiff and Touchmark communicated regularly about Plaintiff's ownership of its ophthalmic equipment and about repossessing the equipment. (Id. ¶¶ 39-45). Throughout their communications, Touchmark asserted that it is not able to identify Plaintiff's equipment with sufficient certainty and requested additional documentation of Plaintiff's ownership. (Id. ¶¶ 39, 41, 43).

Plaintiff's Complaint asserts that Touchmark, during this time, contemporaneously sought bids from potential purchasers, including Quality Med, and allowed the potential bidders to examine the contents stored at the warehouse. (Id. ¶¶ 50, 51). Plaintiff's Complaint asserts that, during the examination, Plaintiff's ophthalmic equipment remained segregated from OER's assets and was tagged as belonging to Plaintiff, but Touchmark informed at least one bidder that Plaintiff's ophthalmic equipment was subject to the sale. (Id. ¶¶ 52, 54).

On December 14, 2015, Touchmark emailed Quality Med to accept Quality Med's bid to purchase all contents of the warehouse. (Id. ¶ 57). Touchmark, after accepting Quality Med's bid, next emailed Plaintiff to express "concerns about the identification of the equipment" and "to set up a conference call to further discuss" Touchmark's concerns. (Id. ¶ 58).

On December 16, 2015, Quality Med began removing the contents from the warehouse, and Touchmark disclosed to Plaintiff that its ophthalmic equipment had been sold.[2]  (Id. ¶¶ 46, 60).  Touchmark did not provide Plaintiff with any information regarding the sale or identify Quality Med as the purchaser.  (Id. ¶¶ 60-70).

Plaintiff's Complaint alleges that Quality Med sold all the items it removed from the warehouse, including Plaintiff's ophthalmic equipment, to various purchasers on eBay and other websites.  (Id. ¶ 72).

B.   Procedural History

On June 2, 2016, Exodus Vision filed this action against Touchmark for, among other things, conversion of Plaintiff's ophthalmic equipment.  (See [1]).  On October 20, 2016, Exodus Vision, after discovering Quality Med was the purchaser, sought leave to add Quality Med as a defendant.  ([22]).  On December 15, 2016, Exodus Vision filed its amended complaint and added Quality Med as a party defendant.  ([34]).  The Complaint asserts, among other things, a claim for conversion under Georgia law against Quality Med (Count VII) and a demand for

---

[2]   In an email sent in the morning of December 16, 2015, Touchmark agreed with Plaintiff's counsel that its "security interest only covers equipment owned by" OER and that OER "cannot give a security interest in equipment it does not own which means [Touchmark] cannot foreclose on [Plaintiff's] property."  (Id. ¶ 45 (alternative in original)).

5

account against Quality Med (Count VIII).  (Id.).  On January 9, 2017, Quality Med moved to dismiss the two claims alleged against it under Federal Rule of Civil Procedure 12(b)(6).  ([40]).

## II. DISCUSSION

### A. Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "assume that the factual allegations in the complaint are true and give the plaintiff[] the benefit of reasonable factual inferences."  Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010).  Although reasonable inferences are made in the plaintiff's favor, "'unwarranted deductions of fact' are not admitted as true."  Aldana v. Del Monte Fresh Produce, N.A., 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting S. Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996)).  Similarly, the Court is not required to accept conclusory allegations and legal conclusions as true.  See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (construing Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

6

Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  Mere "labels and conclusions" are insufficient.  Twombly, 550 U.S. at 555.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  This requires more than the "mere possibility of misconduct."  Am. Dental, 605 F.3d at 1290 (quoting Iqbal, 556 U.S. at 679).  The well-pled allegations must "nudge[] their claims across the line from conceivable to plausible."  Id. at 1289 (quoting Twombly, 550 U.S. at 570).

### B.   Count VII – Conversion

Under Georgia law "a conversion is the unauthorized assumption and exercise of the right of ownership over personal property belonging to another which is contrary to the owner's right."  Swish Mfg. Se. v. Manhattan Fire & Marine Ins. Co., 675 F.2d 1218, 1219 (11th Cir. 1982) (internal quotation marks omitted); Williams v. Natl. Auto Sales, Inc., 651 S.E.2d 194, 196 (Ga. Ct. App. 2007) (A claim for conversion lies where a party wrongfully exercises "any distinct act of dominion and control . . . over another's personal property, in denial of his right or inconsistent with his right.").  A prima facie case for conversion requires a plaintiff to show that "she has title to the property, that the defendant

wrongfully possessed it, and that she demanded possession but the defendant refused to surrender it." Dierkes v. Crawford Orthodontic Care, P.C., 643 S.E.2d 364, 367 (Ga. Ct. App. 2007). "Demand and refusal is necessary only when the defendant comes into possession of the property lawfully."[3] Williams, 651 S.E.2d at 197.

Where the defendant comes into possession of property unlawfully, he commits conversion if (1) another person had title to the property or the right of possession, and (2) the alleged converter had actual possession of the property. Vakili v. Wells Fargo Home Mortg., Inc., No. CV 212-104, 2013 WL 3868170 (S.D. Ga. July 24, 2013) (citing Williams, 651 S.E.2d at 197 (noting that demand and refusal are not required where a person comes into possession of personalty unlawfully, disposes of the property, and retains the proceeds)); Lovinger v. Hix Green Buick Co., 140 S.E.2d 83, 86 (Ga. Ct. App. 1964) (Where . . . an actual conversion is shown, no demand is necessary.").

Quality Med asserts that Exodus Vision's claim for conversion fails as a matter of law because the Complaint fails to establish all the elements of a

---

[3] A defendant lawfully comes into possession of a property when the defendant (1) finds it and retains it for the true owner or (2) where possession was obtained with the permission or consent of the plaintiff. Williams, 651 S.E.2d at 197. Neither of these two scenarios applies to Quality Med.

8

conversion. ([40.1] at 6). Quality Med based this assertion on two theories: (1) Plaintiff does not know what was actually in the warehouse and what Quality Med actually removed that belonged to Plaintiff and (2) Plaintiff only alleged that it had title or right of possession to Plaintiff's equipment and not to everything in the warehouse.[4] (Id.).

Assuming that the factual allegations in the Complaint are true, the most reasonable factual inference is that Plaintiff had the right of possession to its ophthalmic equipment stored in the warehouse. Whether or not Plaintiff knows what else was stored in the warehouse is immaterial. Whether or not Plaintiff knows what else Quality Med removed is similarly immaterial at this stage.[5] The Complaint alleges that, based upon information and belief, everything, including Plaintiff's equipment, in the warehouse was sold as a single lot to Quality Med and that Quality Med removed the contents from the warehouse and resold all of the

---

[4] Quality Med's second theory fails for obvious reasons. Plaintiff only needs to allege that it has title or the right of possession to its own ophthalmic equipment and not to everything in the warehouse. Plaintiff's Complaint clearly contains sufficient factual allegation to establish this.

[5] Quality Med apparently also does not know what it removed from the warehouse: "Quality Med did not prepare an inventory of what it took from the Warehouse, and has no idea what, if anything, was Plaintiff's Equipment." ([40.1] at 3 n.2).

9

items it removed. The Complaint, therefore, also sufficiently alleges that Quality Med had actual possession of Plaintiff's ophthalmic equipment.

Quality Med next asserts that "no claim for conversion lies where a moving party seeks the return of money generally," so "Plaintiff's conversion claim is legally insufficient because it fails to allege that Quality Med withheld tangible, identified money from Plaintiff." ([40.1] at 8). Plaintiff's conversion claim, however, is not an action for conversion of money generally "as fungible intangible personal property," which cannot be the subject to a conversion action, but Plaintiff's claim is for conversion of tangible property, which can be. See Brooks v. Branch Banking & Trust Co., 107 F. Supp. 3d 1290, 1299 (N.D. Ga. 2015) ("Tangible personalty or specific intangible property may be the subject for an action for conversion, but as fungible intangible personal property, money, generally, is not subject to a civil action for trover with an election for damages for its conversion."). In a suit to recover personal property, a plaintiff may elect to recover, alternatively, the property or its value, damages only, or the property and its hire. Lamb v. Salvage Disposal Co. of Georgia, 535 S.E.2d 258, 260 (Ga. Ct. App. 2000) (citing Howard v. Parker, 293 S.E.2d 548 (Ga. Ct. App. 1982); O.C.G.A. § 44–12–151. "[T]he measure of damages where property has been converted is its market value at the time of the conversion." Loggins v. Mitchell,

10

411 S.E.2d 98, 99 (Ga. Ct. App. 1991) (affirming money damages to Plaintiff for the alleged conversion of items stored in a warehouse that were sold to a third party).

Having carefully considered Quality Med's Motion and Exodus Vision's Complaint, the Court finds that Exodus Vision has sufficiently alleged factual matter to state a claim of conversion against Quality Med.  The Court, therefore, declines to dismiss the claim of conversion against Quality Med.

### C. Count VIII – Demand for Accounting

Quality Med next asserts that Count VIII fails as a matter of law because (i) Plaintiff is not entitled to recover judgment under its claim for conversion and (ii) Quality Med has voluntarily consented to a full accounting so Plaintiff's claim is moot.  ([40.1] at 2).  The alleged facts in this case demonstrate that discovery and any accounting may be complicated and intricate.  Because the Court has declined to dismiss Plaintiff's claim for conversion and because Qualified Med has voluntarily consented to a full accounting, the Court, therefore, denies Quality Med's Motion to Dismiss.

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Quality Med, Inc.'s Motion to Dismiss Plaintiff's Third Amended Complaint [40] is **DENIED**.

**SO ORDERED** this 10th day of March, 2017.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE